UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

CHRISTOPHER LEARY

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT OF ACQUITTAL,
OR, ALTERNATIVELY, A NEW TRIAL

April 12, 2019

STEARNS, D.J.

After a ten-week trial and six days of deliberations, a jury convicted defendant Christopher Leary – a former "Clean Room" pharmacist at the now-defunct New England Compounding Center (NECC) – of three counts of mail fraud relating to three shipments of compounded drugs to hospitals. Leary was also found guilty of three counts of violating the federal Food, Drug, and Cosmetic Act (FDCA), two of which were misdemeanors. He was acquitted of violating the Racketeer Influenced and Corrupt Organizations (RICO) statute, RICO conspiracy, and several other mail fraud counts. Leary now moves for a judgment of acquittal on his counts of conviction (mail fraud counts 33, 39, and 41, and FDCA counts 86, 92, and 94) pursuant to Fed. R.

Crim. P. 29, or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33.

Rule 29 judgments of acquittal are granted sparingly. In deciding a Rule 29 motion, the court is to "scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt." *United States* v. *Olbres*, 61 F.3d 967, 970 (1st Cir. 1995), quoting *United States* v. *Taylor*, 54 F.3d 967, 974 (1st Cir. 1995). "Under the viewpoint principle, a jury charged with determining an accused's guilt or innocence is entitled to consider the evidence as a seamless whole. . . . 'The sum of an evidentiary presentation may well be greater than its constituent parts.'" *Olbres,* 61 F.3d at 974, quoting *United States* v. *Ortiz*, 966 F.2d 707, 711 (1st Cir. 1992).

The mail fraud statute criminalizes knowing participation in a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C. § 1341; *see also United States v. Hebshie*, 549 F.3d 30, 35-36 (1st Cir. 2008). Although not explicit in the text of the statute, subsequent judicial interpretation has made clear that mail fraud requires a "misrepresentation or concealment of a material fact." *United States v. Neder*, 527 U.S. 1, 22 (1999). A false statement or

misrepresentation is material if it has "a natural tendency to influence, or [is] capable of influencing, the decisionmaking body to which it is addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988).

Like his co-defendant Gene Svirskiy, Leary alleges a fatal evidentiary insufficiency on two of the required elements of mail fraud. First, he argues that the evidence was insufficient to show that he knowingly joined any scheme at NECC with the requisite intent to defraud. Second, he argues that he personally had no interactions with the purchasers of NECC's drugs and thus could not have made any misrepresentations, material or otherwise, to induce these purchasers to part with money or property. Nor, he alleges, was there evidence that he was aware of any of the representations made to buyers by the NECC sales force.

In support of the latter contention, Leary points to his acquittal on the substantive racketeering and racketeering conspiracy charges, arguing that these acquittals "directly affect[] the evidence that the jury could consider in determining whether he was guilty of the charged mail fraud offenses." Leary Reply Mem., Dkt # 1881, at 3. So stated, the argument goes like this: because the jury found that he was not a knowing participant in the mail fraud racketeering enterprise (or conspiracy), the misrepresentations made to purchasers by individuals that the government alleged were Leary's co-

3

conspirators should not be attributable to him by virtue of his acquittal on those counts. *See* Leary Mem., Dkt # 1843, at 7 ("Leary was not charged with independently devising a scheme to defraud NECC's customers in order to directly benefit himself. He was charged as a member of a criminal enterprise whose purpose was to defraud customers in order to benefit the enterprise that was NECC – and as to that the jury found him *not* guilty.") (emphasis in original).[1]

The weakness of the argument is this: the government was not required to secure a conviction on the RICO conspiracy count as a prerequisite for a finding of guilt with respect to the scheme figuring in the substantive mail fraud counts (which involved drug purchases by Glens Falls Hospital in Glens Falls, New York, the Massachusetts Eye and Ear Institute in Boston, and Florida Hospital Waterman in Tavares, Florida). While mail fraud can be a predicate act for RICO purposes, its proof under RICO requires additional showings of relatedness, temporality, agency, and membership in the enterprise. Plain vanilla mail fraud, on the other hand, is a stand-alone offense. Moreover, where charged as a joint venture, "a multi-member mail

---

[1] The argument is loosely based on the doctrine that requires a judge to make a pre-verdict determination whether out-of-court statements of alleged coconspirators are admissible against a criminal defendant. *See generally United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

fraud is itself treated like a conspiracy," and is subject to the same rules of imputed liability that apply in a generic conspiracy prosecution. *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993).

I agree (and the government appears to concur) that there was no evidence that Leary personally "made any representation about NECC's products to a patient or a customer." Leary Mem., Dkt # 1843, at 6. The purchasers of NECC's drugs uniformly testified that they did not interact directly with any of the pharmacists in the Clean Room, but only with NECC sales representatives, or occasionally, with Barry Cadden, NECC's Chief Pharmacist. However, the question is not whether Leary made direct misrepresentations to customers, but whether he was a knowing participant in a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses," 18 U.S.C. § 1341, and that the making of false pretenses was a reasonably foreseeable consequence of the scheme. *See United States v. Serrano*, 870 F.2d 1, 6-7 (1st Cir. 1989) ("The government need not prove that the defendant devised the fraudulent scheme; but it must prove 'willful participation in the scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved.'") (citation omitted).

Notwithstanding the conspiracy acquittal, a reasonable jury could have found that Leary engaged in affirmative acts that were intended to conceal NECC's non-compliance with United States Pharmacopeia (USP) guidelines from potential regulatory scrutiny. There was evidence at trial that Leary was involved in mislabeling NECC's drugs to falsely give the appearance that they had undergone full sterility testing, and that despite being aware of a fungal bloom in the Clean Room, he joined others in falsifying the cleaning logs. And for the reasons the court stated in rejecting co-defendant Svirskiy's Rule 29 motion, a reasonable jury would have been warranted in finding that compliance with USP guidelines was material to the purchasing decision of the purchasers of NECC's drugs. *See, e.g.*, Trial Tr. at 59 (Nov. 5, 2018) (testimony from Andrew Cordiale, the buyer for Glens Falls Hospital noting that sterility of drugs was "critical, because if it's not sterile, it's not to be put in a person").

In an attempt at rebuttal, Leary minimizes his role at NECC, portraying himself as "a young and inexperienced, but diligent and competent pharmacist who conducted his job in good faith." Leary Mem., Dkt # 1843, at 6. However true a portrait, this same argument was made to a jury properly instructed that good faith was a complete defense to the mail fraud charges:

> As with conspiracy, if a defendant acted in good faith, he or she cannot be guilty of the crime of mail fraud. The law regarding mail fraud is written to punish only those who act knowingly and willfully – that is, purposefully to violate the law, and with the specific intent to defraud. The burden of proving intent, as with all other elements of a crime, rests with the government. If you find that a defendant was not a knowing participant in the scheme or that he lacked the specific intent to defraud, you must find him not guilty.

*See* Trial Tr. at 204 (Dec. 4, 2018); Jury Inst. at 27. Thus, to the extent that Leary seeks to relitigate this issue, the attempt is foreclosed by the jury's verdict. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).[2] Consequently, the Rule 29 Motion will be denied as to the mail fraud counts.

Leary was convicted under two separate provisions of the FDCA: (1) the introduction of adulterated drugs – that is, drugs that were prepared, packed, or stored under insanitary conditions – into interstate commerce (Count 86), and (2) the introduction of misbranded drugs into interstate commerce (Counts 92 and 94). With respect to the "insanitary conditions"

---

[2] Similarly, Leary's complaint that the verdict in his case was inconsistent with those of co-defendants Joseph Evanosky and Gene Svirskiy, *see* Leary Mem., Dkt # 1843, at 3 n.2, is unsustainable as a matter of law. Inconsistent jury verdicts have long been held unobjectionable as long as they are "supported by sufficient evidence." *United States v. Stern*, 13 F.3d 489, 494 (1st Cir. 1994); *see also United States v. Maybury*, 274 F.2d 899, 902 (2d Cir. 1960) (Friendly, J.) ("The vogue for repetitious multiple count indictments may well produce an increase in seemingly inconsistent jury verdicts, where in fact the jury is using its power to prevent the punishment from getting too far out of line with the crime.").

count, the FDCA provides that "a drug or device shall be deemed to be adulterated" when, *inter alia*, "it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 351(a)(2). A drug is misbranded if any word, statement, or other information required by the FDCA to appear on the label or labeling is false or misleading. *Id.*

The jury heard ample evidence that Leary was aware of the widespread (if episodic) contamination in the Clean Room and nonetheless participated in the compounding of drugs in insanitary conditions for shipment to buyers. The jury also heard evidence that Leary participated in the mislabeling of drugs as sterile, tested, and potent. The evidence was more than sufficient to sustain Leary's convictions on the FDCA counts.[3] The Rule 29 Motion will therefore be denied as to FDCA counts.

In the alternative, Leary seeks a new trial under Fed. R. Crim. P. 33. A district court's power to order a new trial pursuant to Rule 33 is broader than

---

[3] Leary raises a final argument that all three FDCA counts constitute strict liability offenses that are unconstitutional. As I have previously stated, at Leary's hearing and in an Order denying a Rule 29 Motion as to Leary's co-defendant Alla Stepanets, *see* Dkt # 1891, the constitutionality of strict liability crimes under the FDCA is a settled matter. S*ee, e.g., United States v. Dotterweich*, 320 U.S. 277 (1943).

its power to grant a motion for acquittal. *United States* v. *Rothrock,* 806 F.2d 318, 321 (1st Cir. 1986). The court may consider both the weight of the evidence and the credibility of the witnesses in deciding a motion for a new trial. *Id.* However, "[t]he remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States* v. *Andrade*, 94 F.3d 9, 14 (1st Cir. 1996), quoting *United States* v. *Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979).

Leary's principal argument, which tracks that of co-defendant Svirskiy, is that the court's decision to permit the government to introduce limited evidence of patient harm related to the fungal-contaminated MPA caused him undue prejudice. This was a matter of extensive discussion prior to the trial and resulted in an Order largely granting the defendants' motion in limine on the subject. *See* Dkt # 1495 (excluding evidence of patient harm except for the limited purpose of informing the jury why federal investigators had descended *en masse* on NECC's premises in the fall of 2012).

Consistent with its ruling, the court explained to the jury at the outset of the trial why and for what purpose the government would be permitted to offer some evidence of the outbreak and the ensuing harm. Trial Tr. at 7-8 (Oct. 15, 2018). I further instructed the jury as follows:

9

> What I need you to keep in mind at all times is that none of these defendants are charged with any involvement in that batch of contaminated drugs, or batches as the case may be. What they are charged with is something entirely unrelated, in the sense that they [had] nothing, and are alleged to have [had] nothing, to do with the deaths or injuries.

*Id.* This instruction was repeated at various points throughout the trial. S*ee, e.g.*, Trial Tr. at 161 (Nov. 15, 2018) ("I've done this before, but I want to remind you that none of the defendants here have been charged with any involvement in the manufacture or compounding of the MPA that caused so much damage."). The isolated incidents that Leary cites of witnesses referring to "the outbreak," *see* Leary Mem., Dkt # 1843 at 18-19, do not to my mind impeach the force of the court's cautionary instructions. While the issue was a delicate one, I am confident that the correct balance between the jury's right to know and the defendant's right not to be prejudiced by too much extraneous information was struck.

Leary next lodges an omnibus objection to the complexity and length of this multi-defendant trial, suggesting that evidence introduced against certain of his co-defendants created an improper spillover effect that resulted in unfair prejudice to his defense. As the phrasing of the argument reveals, this amounts to nothing more than speculation, and is refuted by the jury's verdicts of acquittal on the conspiracy and racketeering counts. *See United States v. Bailey*, 405 F.3d 102, 112 (1st Cir. 2005) ("Such a discriminating

verdict is strong evidence that the jury successfully compartmentalized the evidence and applied the appropriate evidence to the appropriate counts.").

Third, Leary argues that it was error for the court to allow evidence of Leary's alleged compounding of LET gel in deviation from USP standards, as he was not charged in any of the LET gel-related counts. However, the government was within its rights to introduce evidence intended to show the existence of a racketeering enterprise and pattern of conduct without converting every alleged wrongful act into a standalone count in an already overburdened indictment. *See United States v. Connolly*, 341 F.3d 16, 26 (1st Cir. 2003) (finding no error where "the government introduced significant evidence of the existence of the enterprise apart from the specified racketeering acts").[4] In any event, there was no harm to Leary. He was acquitted on both of the racketeering counts.

---

[4] Leary also takes issue with the court's decision to allow evidence of Leary and other NECC employees boasting about the luxury cars that they drove, suggesting that the evidence unfairly impugned his character. While the evidence might well have been excluded, it was relevant to the government's theory that the defendants, including Leary, were driven to cut corners for reasons of personal financial gain. It is well-established that evidence pertaining to the motive for a fraud is relevant and important, *see, e.g., United States v. Appolon*, 695 F.3d 44, 66 (1st Cir. 2012), and on balance, given the passing nature of the testimony, I am confident that no undue prejudice resulted.

Finally, echoing Svirskiy, Leary alleges that the court erred when it revised the FDCA component of the proposed instructions to explain to the jury that, in determining whether Leary introduced adulterated drugs into interstate commerce with intent to defraud or mislead, "[t]he deceit must, however, be about something material, that is, something important that has a natural tendency to influence or at least is capable of influencing a customer or *a government regulator*." Trial Tr. at 214 (Dec. 4, 2018) (emphasis added). The objection is to an interpretation of the FDCA to include government entities as potential victims. The short answer is that the case law is consistent with the court's interpretation. *See, e.g.*, *United States v. Arlen*, 947 F.2d 139, 143 (5th Cir. 1991); *United States v. Bradshaw*, 840 F.2d 871, 874 (8th Cir. 1988).[5]

## ORDER

For the foregoing reasons, Leary's motion for judgment of acquittal, or, alternatively, for a new trial is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[5] There was ample evidence that the scheme included an effort to conceal NECC's activities from the Massachusetts Board of Pharmacy (MABOP). *See* Trial testimony of MABOP Samuel Penta regarding NECC's efforts to mislead MABOP (Nov. 15, 2018). Moreover, even were this error, there was considerable evidence that NECC's customers were the principal target of the scheme to deceive.